UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In re:

Charles J Granzow and
Renee L Granzow,　　　　　　　　　　　　　　　　Case No.: 14-48435-wsd
　　　　　　　　　　　　　　　　　　　　　　　　　Chapter 13
　　　　Debtors.　　　　　　　　　　　　　　　　　Hon. Walter Shapero
_____/

Charles J Granzow and
Renee L Granzow,

　　　　Plaintiffs,

v.　　　　　　　　　　　　　　　　　　　　　　　Adv. Pro. No.: 14-04495

CCO Mortgage,

　　　　Defendant.
_____/

### **OPINION ON VALUATION OF PROPERTY INCIDENT TO LIEN STRIP PROCEEDING**

Introduction

This matter is before the Court upon Plaintiffs' complaint to determine the extent of the third lien on their primary residence ("Subject Property") held by the mortgagee RBS Citizens, formerly CCO Mortgage ("Defendant"). If the third mortgage was wholly unsecured when Plaintiffs filed their bankruptcy petition on May 15, 2014, then it is not subject to the anti-modification protection of 11 U.S.C. § 1322(b)(2) and may be "stripped" and treated as unsecured. *See Lane v. W. Interstate Bancorp* (*In re Lane*), 280 F.3d 663, 669 (6th Cir. 2002). In order for Debtors to do so, the value of the property must be found to be no more than the combined balances of the first and second mortgages, which was stipulated to be $343,808.65. A trial was held.

1

## The Subject Property

The Subject Property is Plaintiff's primary residence located at 61281 Indian Trail, Ray Township, Michigan. Plaintiffs originally purchased vacant land and built a custom ranch home on it in 1999. It has not been substantially improved since then. The Subject Property is on 2.10 acres and the home has 2,750 square feet of gross living area, seven total rooms, including three bedrooms, two and a half bathrooms, a finished basement, a three car attached garage, geothermal heating, and an outdoor pole barn. Ray Township is a rural area where land use is mostly agricultural and partly residential. The Subject Property is on a public gravel/dirt road and is in relatively close proximity (i.e. within approximately ten miles) to more densely populated and developed suburban areas of Macomb County, to which Plaintiffs must travel for shopping and taking their children to school. It is approximately a half mile from a small community airport.

## Mr. Granzow's Opinion of the Subject Property's Value

Mr. Granzow, one of the Debtor-Plaintiffs and a longtime resident of Ray Township, testified that he believed the Subject Property to be worth around $200,000. He based this opinion on his personal familiarity with property values in Ray Township, internet and newspaper research of home sales, and discussions with others who have sold homes in Ray Township. Mr. Granzow testified that (a) the Subject Property's value is reduced by its proximity to the nearby community airport and the fact that planes can be heard loudly every day; and (b) the Subject Property is in need of various repairs that would cost approximately $100,000, including painting, repairs to exterior windows, door handles, and cracks in the driveway and outdoor cement fixtures.

## The Appraisers

Plaintiffs' expert witness, Matthew Vale, is licensed by the State of Michigan as both a realtor and as a Limited Real Estate Appraiser. He too valued the Subject Property at $200,000. Defendant's expert witness, Sheri Mykolaitis, is licensed by the State of Michigan as a Certified Residential Appraiser. She valued the Subject Property at $390,000. The apparent difference between the two appraiser licenses is that Mr. Vale's requires relatively less qualifying education, examination, work experience, and continuing education. More importantly, Limited Real Estate Appraisers "may be the sole inspector for non-federally related transaction, but their reports must also be signed by a certified residential or certified general appraiser." *Mich. Dep't of Licensing and Regulatory Affairs*, http://www.michigan.gov/lara/0,4601,7-154-35299_61343_35414_60647_35474_35670-141841--,00.html (last visited Mar. 10, 2015). Mr. Vale's appraisal report was not so signed. Mr. Vale was admitted at trial as an expert witness without objection and the indicated omission of the required signature was first raised by Defendant in its post-trial brief. In the Court's opinion, differences in the appraisers' credentials and licensure does affect the credibility of their conclusions.

## The Appraisers' Opinions of the Subject Property

Mr. Vale's appraisal report contains certain errors, omissions, and inconsistencies. Thus he for instance incorrectly described the Subject Property as having two bathrooms, rather than two and a half bathrooms. This error would decrease the value of the Subject Property relative to all of his three comparables, but it is difficult to quantify the extent of such. Mr. Vale also erred in indicating that the Subject Property had hardwood flooring, when it actually also had ceramic flooring and carpeting. It is similarly difficult to quantify the impact of such on his valuation.

Mr. Vale indicated that 67% of the Subject Property's basement was finished, while Ms. Mykolaitis more credibly indicates that the basement was 98% finished. Mr. Vale also indicated

3

that he merely estimated the size of the Subject Property's basement, whereas Ms. Mykolaitis indicated that she actually measured it, pursuant to the requirements of the *Uniform Standards of Professional Appraisal Practice* (USPAP). Thus, Mr. Vale understated the Subject Property's area by 550 square feet. Mr. Vale testified that correcting this error would increase the value of the Subject Property by $10,000 to $20,000. The Court finds that the impact of this error should be at the higher end of that range, given that Ms. Mykolaitis made square footage adjustments on the basis of $35 per square foot.

Mr. Vale classified the condition of the Subject Property as C4,[1] meaning:

> The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

Ms. Mykolaitis classified it as C2, meaning:

> The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finished have been updated and/or replaced with components that meet current standards. Dwellings in this category either are almost new or have been recently completely renovated and are similar in condition to new construction.

Mr. Vale testified that the Subject Property needs the repairs testified to by Mr. Granzow, but his appraisal *report* actually specifically indicates that *no needed repairs were noted at the time of inspection*. Mr. Vale listed the Subject Property's interior amenities as "fair," whereas Ms. Mykolaitis listed them as "average." Although not a quantifiable discrepancy, the pictures of the

---

[1] The *Uniform Standards of Professional Appraisal Practice* essentially represent industry standards. These appear to be referenced by both appraisers in this case. Among various elements of an appraisal, according to such, are gradations of condition ("C") and quality-condition ("Q"). Both appraisers used such standards, but differed as to what standard level they would place the Subject Property.

Subject Property indicate a relatively new custom-built home remaining in apparently good condition and with various luxury interior and exterior amenities. Both Mr. Granzow and Mr. Vale testified that the Subject Property's gravel/dirt road has potholes or a "washboard effect." The pictures of the road indicate that it is relatively typical of a gravel/dirt road. The Court concludes that the more appropriate condition classification is not the C4 indicated by Mr. Vale, but instead either C2 as indicated by Ms. Mykolaitis, or at the very least C3, meaning:

> The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

Similarly, Mr. Vale lists the quality rating of the Subject Property as Q4, meaning:

> Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

Ms. Mykolaitis listed it as Q3, meaning:

> Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

For similar reasons, the Court finds that Q3 is more accurately indicative of the Subject Property's quality rating.

## Mr. Vale's Comparables

The effective date of Mr. Vale's appraisal report was December 26, 2013, which is several months prior to the relevant date of this Court's inquiry, i.e. Plaintiff's bankruptcy filing date of May 15, 2014. Mr. Vale testified that had he known that May 15, 2014 was the proper effective

5

date to use, he would not have used the same comparables. Ms. Mykolaitis used the correct effective date and her testimony credibly indicates that USPAP guidelines provide that Mr. Vale's comparables are too old to be used. That serves to substantially reduce the weight and credibility of each of Mr. Vales comparables.

Mr. Vale's Comparable 1 is 15405 27 Mile Road, Ray Township, Michigan. It is located one mile from the Subject Property and on a 2.15 acre lot. It is rated condition C4 and quality Q4. It was sold as a bank-owned sale in May 2012 for $180,000. Mr. Vale's adjusted sale price is $200,000, but this is subject to several errors. Mr. Vale's report erroneously lists Comparable 1's heating as natural gas, when in fact it is forced air (although this error does not appear to have affected its valuation). The Subject Property has geothermal heating which, because of its higher efficiency and possible tax credits, is superior to either natural gas and forced air. The Court finds that Mr. Vale should have made an adjustment to the value of Comparable 1 by adding $2,500 (which was the adjustment made by Ms. Mykolaitis for the geothermal heating). There was also some indication that when Comparable 1 was sold, it needed a new roof, which is a costly repair. However, it is presumed that such defect was factored and reflected in its sale price, particularly as it was an "as-is" sale.

Mr. Vale's Comparable 2 is 67099 Hartway Road, Ray Township, Michigan. It is located 2 miles from the Subject Property and is rated condition C4 and quality Q4. It was sold as a private sale in May 2012 for $220,000. Mr. Vale's adjusted sale price is $210,000, but this too is subject to several errors. Comparable 2 is located on a 2.06 acre lot. Mr. Vale erroneously listed it at 2.5 acres, but no adjustment is necessary, as evidenced by the fact that Ms. Mykolaitis did not make any adjustment for her own Comparable 2, which had a 2.03 acre lot. Mr. Vale's report erroneously lists Comparable 2 as having a partially finished basement, when the basement is in

fact entirely unfinished. Although Comparable 2 had only a two and a half car garage, Mr. Vale failed to make an adjustment relative to the Subject Property, which has a three car garage. Mr. Vale should have added a $7,500 adjustment to Comparable 2's value (as he actually did for Comparable 1, which also had a two and a half car garage). Mr. Vale should have added $2,500 to the value of Comparable 2 because it has forced air heating, rather than geothermal heating.

Mr. Vale's Comparable 3 is 57800 Omo Road, Ray Township, Michigan. It is located 1 mile from the Subject Property and on a ten acre lot. It is rated condition C4 and quality Q4. It is a modular home, whereas the Subject Property is a custom home. It was sold as a private sale in March 2013 for $240,000. Mr. Vale's adjusted sale price is $217,500, but this too is subject to several errors. Although Comparable 2 had only a two and a half car garage, Mr. Vale failed to make an adjustment relative to the Subject Property, which has a three car garage. Thus, Mr. Vale should have added a $7,500 adjustment to Comparable 3's value (as he did for Comparable 1 and should have done for Comparable 2). Mr. Vale should have added $2,500 to the value of Comparable 3 because it has forced air heating, rather than geothermal heating. Mr. Vale erroneously indicated that Comparable 3 does not have an outdoor pole barn, when in fact it does. However, because he also erroneously failed to make the $7,500 adjustment that would have been necessary if it actually lacked a pole barn (as he did with Comparable 1), these errors negate each other and there is no ultimate impact on the valuation of Comparable 3.

<u>Ms. Mykolaitis' Comparables</u>

Ms. Mykolaitis' Comparable 1 is 75088 Peters Drive, Romeo, Michigan. It is located 9.68 miles from the Subject Property and on a 2.62 acre lot. It is rated condition C3 and quality Q3. It was sold as a private sale in April 2014 for $364,583. Ms. Mykolaitis' adjusted sale price is

$390,500. Ms. Mykolaitis indicated that Comparable 1 and Comparable 2 are most similar to the Subject Property.

Ms. Mykolaitis' Comparable 2 is 69201 Eldred Road, Romeo, Michigan. It is located 9.13 miles from the Subject Property and on a 2.03 acre lot. It is rated condition C3 and quality Q3. It was sold as a private sale in April 2014 for $360,000. Ms. Mykolaitis' adjusted sale price is $392,000. As noted, Ms. Mykolaitis said that Comparable 1 and Comparable 2 are most similar to the Subject Property.

Ms. Mykolaitis' Comparable 3 is 8988 34 Mile Road, Romeo, Michigan. It is located 9.00 miles from the Subject Property and on a 1.75 acre lot. It is rated condition C2 and quality Q3. It was sold as a private sale in January 2014 for $370,000. Ms. Mykolaitis' adjusted sale price is $370,500.

Ms. Mykolaitis' Comparable 4 is 53203 Foss Road, Macomb Township, Michigan. It is located 4.20 miles from the Subject Property and on a 5.11 acre lot. It is rated condition C2 and quality Q3. It was sold as a private sale in December 2013 for $445,000. Ms. Mykolaitis' adjusted sale price is $435,000.

Ms. Mykolaitis' Comparable 5 is 58320 Frost Road, New Haven, Michigan. It is located 7.90 miles from the Subject Property and on a 2.54 acre lot. It is rated condition C2 and quality Q3. It was sold as a private sale in December 2013 for $349,900. Ms. Mykolaitis' adjusted sale price is $354,500.

Ms. Mykolaitis' Comparable 6 is 60633 Kunstman Road, Ray Township, Michigan. It is located 2.51 miles from the Subject Property and on a 2.81 acre lot. It is rated condition C3 and quality Q3. It was sold as a bank-owned sale in July 2013 for $370,000. Ms. Mykolaitis' adjusted sale price is $397,000.

Ms. Mykolaitis' Comparable 7 is 11234 Nadia Drive, Romeo, Michigan. It is located 9.72 miles from the Subject Property and on a 1.03 acre lot. It is rated condition C2 and quality Q3. It is an active listing for $414,900. Ms. Mykolaitis' adjusted listing price is $405,000.

Ms. Mykolaitis' Comparable 8 is 7784 Frampton Drive, Washington, Michigan. It is located 8.14 miles from the Subject Property and on a 1.05 acre lot. It is rated condition C2 and quality Q3. It is an active listing for $369,000. Ms. Mykolaitis' adjusted listing price is $412,000.

## Discussion and Conclusion

In valuation situations involving expert testimony, credibility and weight of the evidence and testimony are touchstones of the appropriate conclusion. A homeowner's opinion as to value, while relevant evidence, normally carries less weight and credibility by reason of the homeowner's interest in a specific result and the outcome of the case. Here, Mr. Granzow's opinion and that of his appraiser Mr. Vale essentially coincide, and as noted, there is an unusually wide differential between their roughly similar mutual opinion on one hand, and that of Ms. Mykolaitis on the other hand. Furthermore, where the homeowner and his expert appraiser's opinion virtually coincide, but to some extent are reached by somewhat differing analytics, one cannot help but attribute to each any evident infirmities or weaknesses found in both. And in the case of a wide disparity between the two sides, any temptation to more or less split the difference need always be resisted, particularly in the circumstances of this case.

Mr. Vale's appraisal report and testimony have some errors, omissions, and inconsistencies that call into question the accuracy of his valuation methods and his ultimate result. Further, by Mr. Vale's own admission, had he known the bankruptcy filing date was the proper valuation date, he would have used newer comparables, and that substantially reduces the weight to be afforded to those comparables he did use. His valuation loses further weight by the indicated

9

failure to have his report signed by another appraiser, pursuant to the terms and requirements of the nature of his appraiser license.

On the other hand, Ms. Mykolaitis' appraisal report is significantly more credible and the Court places substantially more weight on her expert opinion, even though it is criticized by Plaintiffs for various reasons, none of which serve to substantially or decisively discredit it, in this Court's view. First, Plaintiffs argue that Mr. Vale is more familiar with Macomb County real estate than Ms. Mykolaitis. However, what is most important is her proficiency and qualification in real estate valuation, as well as the research, analysis, and comparables that form the basis for her opinion, not so much as general familiarity with the specific area. Second, Plaintiffs argue that her appraisal report did not indicate that the Subject Property was in close proximity to a small community airport and failed to factor that into her valuation. However, it should also be noted that Mr. Vale's report noted only that the proximity to the airport is an adverse condition, but never specified the extent to which it affected the value of the Subject Property. The Court will give some appropriate weight to the proximity of the airport as an adverse factor.

Third, Plaintiffs point out that Ms. Mykolaitis used comparables that were not in Ray Township, but rather were in the surrounding suburbs. Indeed, there was a substantial difference of opinion in how to classify the Subject Property's neighborhood. Mr. Vale defined the neighborhood as Ray Township and thus limited his comparables accordingly. Ms. Mykolaitis, however, defined the neighborhood as the New Haven School District, which encompasses both the Subject Property and some of the nearby suburban neighborhoods. All but one of her comparables were outside Ray Township. She indicated that she did so because of the insufficient number of recently closed sales in Ray Township and because USPAP guidelines permit her to do so in these circumstances. She thus characterized the Subject Property as being

in a "suburban" neighborhood, whereas Mr. Vale characterized it as "rural." Ms. Mykolaitis listed the percent land use as 70% "one-unit" and 27% "other" (likely agricultural), whereas Mr. Vale listed those figures at 15% and 82%, respectively. She also indicated that the neighborhood can be classified as "rurban" (an industry term of art indicating that the area is transitioning from rural to suburban and is within commuting distance of a city).

The Court notes that, while the Subject Property itself, given its immediate surroundings, might be said to be in a rural area, it is in fairly close proximity to suburban areas. Mr. Granzow himself testified that Plaintiffs are required to drive to the nearby suburbs to shop and take their children to school, meaning that there thus exists an interdependent relationship between Ray Township and the surrounding suburbs. It is reasonable to conclude that a comparable property that is inside a ten mile radius from the Subject Property should not be considered to be in an entirely disparate housing market. Ten miles of travel in a rural or "rurban" area is relatively less arduous than ten miles of travel in an urban or suburban area. Ms. Mykolaitis' use of the broader school district parameters, rather than the Ray Township borders, thus appears reasonable. Furthermore, arguably it is a plus to live in a somewhat rural property that is accessible by means of relatively moderate drives in exchange for the benefits of living in a rural area. The Court finds that the balance of these benefits and burdens is essentially reflected by the home prices in the area's housing market. If homes, solely by virtue of their location in Ray Township, were indeed about $150,000 cheaper than comparable homes in the nearby suburbs (as Mr. Vale tends to indicate), one would think that the market would effectively address and reflect this tremendous imbalance. The Court is much more inclined to consider each home's amenities and features, rather than relying primarily on whether or not it is specifically located in Ray Township. In any event, Ms. Mykolaitis' Comparable 6, which is located in Ray Township and

only 2.51 miles from the Subject Property, had a sale price of $370,000, notwithstanding the fact that it was a bank-owned sale, likely reflecting a somewhat discounted sale price. Ms. Mykolaitis' adjusted sale price for Comparable 6, relative to the Subject Property, is $397,000.

Considering the totality of the evidence and affording what the Court determines to be the appropriate weight, the Court finds that Plaintiffs have not met their burden of proof by a preponderance that the Subject Property's value is less than $343,808.65. The Court finds that the value of the Subject Property is much more likely closer Ms. Mykolaitis' valuation of $390,000 or only somewhat less, but in any event still substantially exceeding $343,808.65 and the Court need not decide an exact valuation. The outcome is not affected by Defendant's Marshaling Doctrine argument, whereby Defendant argued that the second mortgage's balance should be reduced by $16,500, the stipulated value of personal property cross-collateralizing it. Even if the Court accepted that argument, such would clearly not affect the result, given the foregoing conclusion as to the Subject Property's value. Defendant shall present an appropriate order.

**Signed on March 11, 2015**

                                                    **/s/ Walter Shapero**
                                      **Walter Shapero**
                                      **United States Bankruptcy Judge**